UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ED MEHDI ZARGARIAN,<br><br>Plaintiff,<br><br>v.<br><br>SCOTT M. OUDKIRK, et al.,<br><br>Defendants. | No. 2:24-cv-02008-DAD-JDP<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>(Doc. No. 6) |

This matter is before the court on defendants' motion to dismiss and motion for summary judgment filed on September 24, 2024. (Doc. No. 6.) On October 31, 2024, the pending motion was taken under submission pursuant to Local Rule 230(g). (Doc. No. 11.) For the reasons explained below, defendants' motion to dismiss will be granted in part and denied in part, and defendants' motion for summary judgment in their favor will be denied.

**BACKGROUND**

Plaintiff Ed Mehdi Zargarian brings this action against defendants Scott M. Oudkirk, Deputy Chief of Mission for the U.S. Embassy in Turkey, and Antony Blinken, former Secretary of the U.S. Department of State, based upon defendants' alleged delay in processing the visa

/////

1

application of plaintiff's sister, Azar Zargarian. (Doc. No. 1.) On July 24, 2024, plaintiff filed his complaint initiating this civil rights action, alleging as follows. (*Id.*)

In July 2009, plaintiff properly filed with United States Citizenship and Immigration Service ("USCIS") an I-130 form seeking to establish a qualifying relationship with his sister who lives in Iran to lay the groundwork for her visa application. (*Id.* at ¶ 16.) In February 2019, USCIS approved the I-130, and in September 2023, plaintiff's sister was interviewed at the U.S. Embassy in Turkey in connection with her visa application. (*Id.* at ¶¶ 17, 19.) After that interview, plaintiff's sister learned that the application was placed in administrative processing pursuant to Immigration and Nationality Act ("INA") § 221(g). (*Id.* at ¶ 20.) She was given the form DS5535 to submit additional documents, which she subsequently filled out and submitted on September 29, 2023. (*Id.*) In March 2024 and June 2024, plaintiff sent emails inquiring with the U.S. Embassy in Turkey about the status of his sister's visa application. (*Id.* at ¶ 22.) Plaintiff received the following identical form response to his inquiry each time. (*Id.*)

> Your application is still undergoing required administrative processing. Unfortunately, we are unable to predict how long administrative processing will take for a given case, and we are unable to influence the completion of the process. We will send you a notification email as soon as we receive an update. Likewise, if we need further information, then we will immediately contact you via email.

(*Id.*)

Since the September 2023 interview, plaintiff and his sister have inquired as to the status of her visa application on numerous occasions and received no meaningful responses. (*Id.* at ¶ 23.) "Upon information and belief, it is unclear what steps, if any Defendants are actually taking to complete adjudication of [plaintiff's sister's] visa application." (*Id.*)

Plaintiff has been separated from his sister during the application process and has been unable to visit her over the past four years due to work constraints and safety concerns as a citizen of the United States. (*Id.* at ¶¶ 6, 8.) As a result of that separation, plaintiff and his sister have experienced significant personal, emotional, and financial hardship. (*Id.* ¶ 6.) Plaintiff fears for the safety of his sister, a 65-year-old retired woman living alone in Iran, where civil and political unrest poses safety challenges to women. (*Id.* at ¶ 7.)

On July 24, 2024, plaintiff filed the operative complaint alleging three causes of action: (1) violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1); (2) Mandamus Act; and (3) deprivation of procedural due process rights in violation of the Fifth Amendment. (*Id.* at ¶¶ 24–40.) Plaintiff seeks relief in the form of an order compelling defendants to adjudicate his sister's visa application. (*Id.* at ¶¶ 28, 35, 37, 41.)

The court also notes the following undisputed facts.[1] The consular officer refused plaintiff's visa application "under INA § 221(g)[,]" determining that "additional security screening was required." (DUF ¶ 7.) Then, "consular staff at the U.S. Embassy in Ankara sent a list of questions consistent with Form DS-5535, Supplemental Questions for Visa Applicants, to" plaintiff's sister. (DUF ¶ 8.) "The additional security screening is ongoing[.]" (DUF ¶ 9.)

On September 24, 2024, defendants filed the pending motion to dismiss or, in the alternative, motion for summary judgment in their favor. (Doc. No. 6.) On October 8, 2024, plaintiff filed his opposition, and on October 18, 2024, defendants filed their reply. (Doc. Nos. 9, 10.) On November 18, 2024 and March 26, 2025, defendants filed notices of supplemental authority. (Doc. Nos. 12, 15.) On April 9, 2025, plaintiff filed a response to defendants' March 26, 2025 notice of supplemental authority. (Doc. No. 16.)

**LEGAL STANDARDS**

**A.   Motion to Dismiss**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

---

[1] The relevant facts that follow are undisputed and are derived from the undisputed facts as stated by defendants (Doc. No. 6-1 ("DUF")) and responded to by plaintiff (Doc. No. 9 at 7), as well as the affidavit filed in support of defendants' motion for summary judgment (Doc. No. 6-2).

the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). However, the court need not assume the truth of legal conclusions cast in the form of factual allegations. *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

**B.     Motion for Summary Judgment**

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

In summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). If the moving party will bear the burden of proof on an issue at


trial, "the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B). Indeed, after adequate time for discovery and upon motion, summary judgment should be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment . . . is satisfied." *Id.* at 323.

      If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits or admissible discovery material in support of its contention that the dispute exists. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment."). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986).

      In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all inferences supported by the evidence in favor of the non-moving party." *Walls v. Cent. Contra Costa Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 586–87 (citations omitted).

**ANALYSIS**

**A.     Plaintiff's APA and Mandamus Claims**

"When a complaint seeks identical relief under the APA and the Mandamus Act, courts routinely elect to only analyze the APA claims." *Salarian v. Blinken*, No. 23-cv-01315-LL-BJC, 2024 WL 4008758, at *4 (S.D. Cal. Aug. 30, 2024) (citing *Vaz v. Neal*, 33 F.4th 1131, 1135 (9th Cir. 2022)). Here, plaintiff seeks identical relief under the APA and the Mandamus Act. (Doc. No. 1 at ¶¶ 28, 35.) The court therefore only addresses plaintiff's APA claim.

Pursuant to the APA, a court "shall compel agency action unlawfully withheld or unreasonably delayed" where an agency fails to take a discrete action it is required to take. 5 U.S.C. § 706(1); *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). A plaintiff asserting a claim of unreasonable delay under the APA must show that the agency (1) had a nondiscretionary duty to act and (2) unreasonably delayed in acting on that duty. *Norton*, 542 U.S. at 63–65; 5 U.S.C. §§ 555(b), 701(a)(2).

/////

/////

1.  Whether Plaintiff's Claim Is Barred by Consular Non-Reviewability

The Ninth Circuit has "long recognized that ordinarily, a consular official's decision to deny a visa to a foreigner is not subject to judicial review." *Allen v. Milas*, 896 F.3d 1094, 1104 (9th Cir. 2018). However, "the doctrine does not apply where plaintiffs seek a final decision on their visa applications rather than judicial review of a consular decision." *Jamalinia v. Rubio*, No. 2:24-cv-00981-JDP, 2025 WL 744861, at *4 (E.D. Cal. Mar. 7, 2025); *see also Patel v. Reno*, 134 F.3d 929, 932 (9th Cir. 1997) ("[W]hen the suit challenges the authority of the consul to take or fail to take an action as opposed to a decision taken within the consul's discretion, jurisdiction exists. . . . Therefore, jurisdiction exists to consider whether the consulate has the authority to suspend the visa applications."). Here, plaintiff purports to seek a final decision on his sister's visa application such that consular non-reviewability does not apply. (Doc. No. 1 at ¶ 28.)

In their pending motion, defendants highlight that following the consular interview, plaintiff's sister received a refusal based on § 1201(g). (Doc. No. 6 at 9.) Defendants argue that such a refusal "reflects that a consular officer determined that the visa applicant failed to meet their burden to establish eligibility for the visa sought, and while additional discretionary investigation may prompt the consular official to reopen that decision, 'the action of [the consular officer] under such authority is final and conclusive.'" (*Id.*) (quoting *U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950)). In his opposition, plaintiff argues that such a "refusal" does not qualify as a final consular decision. (Doc. No. 9 at 11.)

"[T]he mere fact that the State Department has chosen to characterize an action as a 'refusal' does not necessarily make it a final decision; rather, 'the focus should be on what is *actually* happening[.]'" *Alam v. Blinken*, No. 2:24-cv-01103-DJC-CKD, 2024 WL 4804557, at *4 (E.D. Cal. Nov. 15, 2024) (quoting *Vulupala v. Barr*, 438 F. Supp. 3d 93, 98 (D.D.C. 2020)); *see also Patel*, 134 F.3d at 932 (finding that a letter denying a visa application was "not a final decision"). As such, "the prevailing position . . . is that a refusal for administrative processing is not a final decision and therefore does not discharge the agency's obligation to adjudicate visa applications." *Alam*, 2024 WL 4804557, at *5 (collecting cases).

/////

7

Here, it is undisputed that the consular officer refused plaintiff's visa application "under INA § 221(g)[,]" determining that "additional security screening was required." (DUF ¶ 7.) Then, "consular staff at the U.S. Embassy in Ankara sent a list of questions consistent with Form DS-5535, Supplemental Questions for Visa Applicants, to" plaintiff's sister. (DUF ¶ 8.) In the language of the complaint, plaintiff's sister's "case was placed in administrative processing pursuant to [INA] § 221(g)." (Doc. No. 1 at 20.) Therefore, applying either the summary judgment or motion to dismiss standard, defendants' action is not a final decision because it constitutes a refusal under INA § 221(g) for administrative processing. *Patel*, 134 F.3d at 932 (finding that a letter denying the plaintiff's visa under INA § 221(g) "is not a final decision"); *Alam*, 2024 WL 4804557, at *5 ("For these reasons, many courts have concluded that an unreasonable delay claim may proceed where, as here, the plaintiff seeks to challenge the State Department's failure to take timely action on a visa application following the submission of a Form DS-5535 after the consular interview.") (collecting cases). Therefore, the consular non-reviewability doctrine does not apply to bar plaintiff's claim.

### 2. Whether Defendants have a Non-Discretionary Duty to Adjudicate Plaintiff's Sister's Visa Application

APA § "706(1) 'grants judicial review if a federal agency has a "ministerial or non-discretionary" duty amounting to a "specific, unequivocal command."'" *Alam*, 2024 WL 4804557, at *4 (quoting *Anglers Conservation Network v. Pritzker*, 809 F.3d 664, 670 (D.C. Cir. 2016)).

In their pending motion, defendants argue that they owe no non-discretionary duty to plaintiff because plaintiff's sister's application was refused following her consular interview, and there is no non-discretionary duty to reconsider whether that refusal may be overcome within a specified timeframe. (Doc. No. 6 at 11.) In his opposition, plaintiff argues that pursuant to 8 U.S.C. § 1202(b), there exists a nondiscretionary duty to adjudicate all visas through conclusion, and the APA overlays a requirement that all adjudications must be completed within a reasonable time and not be unreasonably or illegally withheld. (Doc. No. 9 at 15.)

/////

8

Under the INA, "[a]ll immigrant visa applications shall be reviewed and adjudicated by a consular officer." 8 U.S.C. § 1202(b). "Courts are split on whether there is a mandatory duty to review and adjudicate immigrant visa applications under § 1202(b)." *Iqbal v. Blinken*, No. 2:23-cv-01299-KJM-KJN, 2023 WL 7418353, at *6 (E.D. Cal. Nov. 9, 2023). The undersigned is persuaded that the statute's use of "'shall' indicates a mandatory nondiscretionary duty to review and adjudicate immigrant visa applications." *Id.* The court therefore finds "section 1202(b) imposes a clear duty" on defendants to adjudicate plaintiff's sister's immigrant visa application. *Alam*, 2024 WL 4804557, at *4; *see also Kassem v. Blinken*, No. 1:21-cv-01400-DAD-HBK, 2021 WL 4356052, at *5 (E.D. Cal. Sept. 24, 2021) (same).

Because defendants have a clear, non-discretionary duty to adjudicate plaintiff's sister's immigrant visa application, the APA imposes a requirement on defendants "to conclude" this adjudication "within a reasonable time." 5 U.S.C. § 555(b). Further, despite defendants' efforts to parse the relevant duty as a duty to "reconsider[,]" as discussed above, defendants have not yet issued a final decision regarding plaintiff's sister's visa. (Doc. No. 6 at 11.) "Thus, defendants have a nondiscretionary duty to adjudicate plaintiff['s] immigrant visa petitions within a reasonable time." *Iqbal*, 2023 WL 7418353, at *7.

    3.    <u>Whether *TRAC* Review is Premature</u>

In evaluating the reasonableness of agency delay, a court considers six factors:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*In re Nat. Res. Def. Council, Inc.*, 956 F.3d 1134, 1138–39 (9th Cir. 2020) (quoting *Telecomms. Rsch. & Action Ctr. v. FCC* ("*TRAC*"), 750 F.2d 70, 79-80 (D.C. Cir. 1984)). "The most

/////

9

1  important is the first factor, the 'rule of reason,' though it, like the others, is not itself
2  determinative." *In re A Cmty. Voice*, 878 F.3d 779, 786 (9th Cir. 2017) (citation omitted).
3        In his opposition, plaintiff argues that review of these factors is premature "because the
4  record is not nearly complete in this matter[.]" (Doc. No. 9 at 18.)  Plaintiff explains that
5  discovery "might bring to light relevant information on gauging reasonableness, including how
6  many visa requests are pending for those in substantially similar hardship circumstances . . . and
7  how long similar visa requests take to process, all of which could aid the Court in determining
8  whether the delay, in this case, is, in fact, reasonable or unreasonable[.]" (*Id.*)  In their reply,
9  defendants acknowledge a split of authority regarding whether to apply the *TRAC* factors at this
10  stage in the litigation, but argue that this court should follow the majority of courts that have
11  evaluated unreasonable delay claims at the motion to dismiss stage of litigation. (Doc. No. 10 at
12  8.)
13        a.   *Motion to Dismiss*
14        "Because of the fact-intensive nature of the reasonableness determination, courts disagree
15  on whether the *TRAC* factors should be analyzed to resolve a motion to dismiss." *Iqbal*, 2023
16  WL 7418353, at *7 (citation omitted).  The Ninth Circuit has yet to address this question. *See*
17  *Vaz*, 33 F.4th at 1138 ("Vaz does argue that unreasonable delay is a factual question that should
18  not be decided under motion to dismiss standards.  But his argument is irrelevant because, as
19  discussed above, we treat the district court's dismissal as a grant of summary judgment and apply
20  summary judgment standards.").  "Resolution of a claim of unreasonable delay is ordinarily a
21  complicated and nuanced task requiring consideration of the particular facts and circumstances
22  before the court." *Gonzalez v. U.S. Dep't of Homeland Sec.*, 500 F. Supp. 3d 1115, 1130 (E.D.
23  Cal. 2020) (quoting *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100
24  (D.C. Cir. 2003)).  Moreover, it has been recognized that "[t]here is nothing unusual about
25  abstaining from undertaking such a fact-intensive inquiry at the pleading stage."
26  *Sheikhalizadehjahed v. Gaudiosi*, No. 2:24-cv-01136 SCR, 2024 WL 4505648, at *8 (E.D. Cal.
27  Oct. 16, 2024) (collecting cases); *see also Austin v. Univ. of Or.*, 925 F.3d 1133, 1136–37 (9th
28  Cir. 2019) ("[T]he Court has never indicated that the requirements for establishing a prima facie

1    case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in

2    order to survive a motion to dismiss.") (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511

3    (2002)).

4        In the instant case, plaintiff currently has access to information regarding the length of

5    delay of the agency action (a component of *TRAC* factor one) and the extent to which human

6    health and welfare are at stake (*TRAC* factor three).  *See In re Nat. Res. Def. Council, Inc.*, 956

7    F.3d at 1138–39; *Alam*, 2024 WL 4804557, at *7 (*TRAC* factor one, the rule of reason, is meant

8    to encompass "both the length of the delay and the reasons for the delay.").  However, at this

9    early stage of the litigation, plaintiff does not have access to the inner workings of the consular

10   visa process.  Plaintiff therefore has not alleged the reason for the delay (a component of *TRAC*

11   factor one), or relatedly, whether requiring prompt adjudication of plaintiff's sister's application

12   would disadvantage other applicants by rearranging priorities in a zero-sum game (*TRAC* factor

13   four).  *See In re Nat. Res. Def. Council, Inc.*, 956 F.3d at 1138–39; *Alam*, 2024 WL 4804557, at

14   *7.  In some cases, for instance where the visa applicant is located within the United States

15   experiencing minimal hardship from the delay and the length of delay is comparatively short, it

16   may be appropriate for the court to apply the *TRAC* factors in addressing a motion to dismiss to

17   find that the delay is reasonable, even in the absence of full information regarding the other *TRAC*

18   factors.

19       But in the instant case, human health and welfare are at stake while plaintiff's sister

20   allegedly waits for adjudication of her visa application outside the United States in an

21   environment with "political unrest" and "safety challenges[.]"  (Doc. No. 1 at ¶ 7.)  Furthermore,

22   the length of delay, measured from the last agency action to the date this order issues, is alleged

23   to be one year and seven months (19 months).  *See In re A Cmty. Voice*, 878 F.3d at 787

24   (calculating the agency's delay as the time between the last agency action and the court's order);

25   *Vaz*, 33 F.4th at 1138 (same); *Alam*, 2024 WL 4804557, at *7 (same); *Sheikhalizadehjahed*, 2024

26   WL 4505648, at *9 ("At the hearing, the parties agreed that the proper calculation of the delay is

27   from the date of the consular interview to the date of the court's decision on the delay.  This

28   appears to be an accepted approach in post-interview delay cases.").  This length of delay may be

unreasonable. *Sheikhalizadehjahed*, 2024 WL 4505648, at *9 (finding a delay of 20 months at the time of the order "without the benefit of further justification or explanation as to why gathering additional information is taking so long, is enough to plausibly allege an unreasonable delay"); *see also Vaz*, 33 F.4th at 1138 ("Repeatedly, courts in this and other circuits have concluded that a reasonable time for agency action is typically counted in weeks or months, not years.") (quoting *In re Nat. Res. Def. Council, Inc.*, 956 F.3d at 1139); *Iqbal*, 2023 WL 7418353, at *3, 8 (finding that the plaintiffs had plausibly alleged an unreasonable delay where they filed the action "twelve to fifteen months after the last government action" and the court's order issued five months later). Whether this 19 month delay in this case is unreasonable would depend, in part, on the "justification or explanation as to why gathering additional information is taking so long[.]" *Sheikhalizadehjahed*, 2024 WL 4505648, at *9. Therefore, in this case, application of the *TRAC* factors would require the court to evaluate the reason for the delay and, at this early stage in the litigation, it can only do so by looking beyond the face of the complaint to assumptions and generalities rather than based upon a fact-specific inquiry. *See, e.g.*, *Alam*, 2024 WL 4804557, at *7 ("Decisions regarding the admission of foreign nationals frequently implicate relations with foreign powers, or involve classifications defined in the light of changing political and economic circumstances.") (citation omitted); *see also Gonzalez*, 500 F. Supp. 3d at 1130 ("Adopting defendant's argument would require the court to look beyond the face of plaintiffs' complaint and, without the benefit of the administrative record, evaluate facts concerning USCIS' general practices, whether those practices were followed in this case, and the number of U visa petitions filed over the past several years."). Given that the *TRAC* factors are meant to be fact-intensive, the court finds that application of the *TRAC* factors in this case at this stage of the litigation is premature, and "the reasonableness inquiry is best resolved ultimately on a full factual record." *Iqbal*, 2023 WL 7418353, at *8; *see also Salarian*, 2024 WL 4008758, at *4 (collecting cases); *Sheikhalizadehjahed*, 2024 WL 4505648, at *8 (same).

Still, the court must determine whether plaintiff's complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Hinds Invs., L.P. v. Angioli*, 654 F.3d 846, 850 (9th Cir. 2011). For the reasons explained above, including the

12

extent to which human health and welfare are at stake and the length of the delay, plaintiff has plausibly alleged unreasonable delay. *See Sheikhalizadehjahed*, 2024 WL 4505648, at *9 (finding a delay of 20 months at the time of the order "without the benefit of further justification or explanation as to why gathering additional information is taking so long, is enough to plausibly allege an unreasonable delay"); *Vaz*, 33 F.4th at 1138 ("Repeatedly, courts in this and other circuits have concluded that a reasonable time for agency action is typically counted in weeks or months, not years.") (quoting *In re Nat. Res. Def. Council, Inc.*, 956 F.3d at 1139); *Iqbal*, 2023 WL 7418353, at *3, 8 (finding that the plaintiffs had plausibly alleged an unreasonable delay where they filed the action "twelve to fifteen months after the last government action" and the court's order issued five months later).[2]

          b.    *Motion for Summary Judgment*

In the alternative, defendants bring a motion for summary judgment in their favor. "Federal Rule of Civil Procedure 56(d) provides a mechanism by which the nonmoving party may request additional time to take discovery necessary to oppose a motion for summary judgment." *Kapoor v. Blinken*, No. 21-cv-01961-BLF, 2022 WL 181217, at *5 (N.D. Cal. Jan. 20, 2022). Where "a summary judgment motion is filed so early in the litigation, before a party has had any realistic opportunity to pursue discovery relating to its theory of the case, district courts should grant any Rule 56(f) motion fairly freely." *Burlington N. Santa Fe R.R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Rsrv.*, 323 F.3d 767, 773 (9th Cir. 2003); *see also Aliff v.*

---

[2] This court acknowledges that other district courts have found longer delays to be reasonable. *See Alam*, 2024 WL 4804557, at *7 (collecting cases). However, the court finds "most of those cases inapposite where they dealt with pre-consular interview delays, delays in student- or employment-based visa applications (rather than family-based applications), or delays justified to some extent by the COVID pandemic." *Sheikhalizadehjahed*, 2024 WL 4505648, at *9. As for cases that are analogous to those in this case—family-based post-consular-interview delays—this court, like the court in *Sheikhalizadehjahed*, "has reservations in following several of them because they rely on other cases that are inapposite to conclude that the given post-interview delay is not unreasonable." *Id.*; *see also Alam*, 2024 WL 4804557, at *7 ("The Court notes that there is a dearth of circuit law addressing what constitutes unreasonable delay in the immigration context, particularly in the family-based immigrant visa context. In addition, many district court cases which have found delays of less than four years reasonable involve visa petitions where plaintiffs were in the United States and not facing family separation, which is clearly distinguishable from the context here.").

13

*Vervent Inc.*, No. 20-cv-00697-DMS-AHG, 2022 WL 3588322, at *4 (S.D. Cal. Aug. 22, 2022) ("Motions for summary judgment are frequently considered premature and denied when discovery has not been completed[.]").

Here, plaintiff has not "show[n] by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition" as required by Rule 56(d). Fed. R. Civ. P. 56(d). However, "substantially complying with the requirements of the rule by showing how particular discovery would defeat summary judgment and why specific facts are not yet available is enough for a party to successfully demonstrate that summary judgment is precluded." *Aliff*, 2022 WL 3588322, at *4; *see also Burlington N. Santa Fe R. Co.*, 323 F.3d at 774 (Where "no discovery whatsoever has taken place, the party making a Rule 56(f) motion cannot be expected to frame its motion with great specificity as to the kind of discovery likely to turn up useful information, as the ground for such specificity has not yet been laid."). Further, the court may apply Rule 56(d) "*sua sponte*." *Encinas v. Univ. of Wash.*, No. 2:20-cv-01679-TL, 2022 WL 4598083, at *8 (W.D. Wash. Sept. 30, 2022).

The court's concerns regarding *TRAC* review discussed above persist in the context of summary judgment. The court does not have evidence necessary to determine, for instance, the reason for the delay because defendants' undisputed facts state only that "additional security screening is ongoing[.]" (DUF ¶ 9.) Furthermore, as stated above, plaintiff does not currently have access to information or evidence regarding the reason for the delay. For this reason, the court is persuaded by plaintiff's argument that further discovery is necessary here to allow plaintiff access to evidence regarding, for instance, how many comparable visa applications are pending and how long similar visa requests take to process. (Doc. No. 9 at 18.) This evidence is relevant to evaluating such *TRAC* factors as whether the length of the delay complies with the rule of reason and whether plaintiff's success in this suit would merely advantage plaintiff in a "zero-sum game" for consular resources. (Doc. No. 6 at 17.) To allow time for further discovery to clarify the fact-intensive *TRAC* factors, the court will deny defendants' motion for summary judgment without prejudice to it being refiled and/or supplemented at a later date. *Sheikhalizadehjahed*, 2024 WL 4505648, at *11 (denying without prejudice the defendants'

1  motion for summary judgment as premature where the plaintiff alleged the defendants

2  unreasonably delayed in reviewing and adjudicating her father's visa application).

3  **B.     Plaintiff's Fifth Amendment Due Process Claim**

4  In their motion, defendants argue that a recent Supreme Court case, *Department of State v.*

5  *Muñoz*, 602 U.S. 899 (2024), "firmly foreclosed Plaintiff's due process argument." (Doc. No. 6

6  at 23.)  According to defendants, in *Muñoz* the Supreme Court held that "a citizen does not have a

7  fundamental liberty interest in [their] noncitizen spouse being admitted to the country." *Muñoz*,

8  602 U.S. at 909.

9  In his opposition, plaintiff argues that *Muñoz* "presented a narrow constitutional issue

10 where the Plaintiff, in that case, believed her constitutional rights were violated by the State

11 Department for failure to provide a sufficient reason as to why her husband was deemed

12 inadmissible." (Doc. No. 9 at 25–26.)  By contrast, "Plaintiff Zargarian merely seeks final

13 adjudication on his sister's visa application[.]" (*Id.* at 26.)  Furthermore, plaintiff argues, the right

14 to family relationships is fundamental. (*Id.* at 26–27.)

15 The court concludes that the liberty interest plaintiff identifies is foreclosed by the

16 Supreme Court's decision in *Muñoz*, which held that "Congress can use its authority over

17 immigration to prioritize the unity of the immigrant family. . . . [b]ut the Constitution does not

18 *require* this result[.]"  602 U.S. at 916.  Further, the court finds that plaintiff's attempts to

19 distinguish *Muñoz* are unavailing.  Although *Muñoz* involved refusal of a visa, rather than a visa

20 application processing delay, district courts in the Ninth Circuit have found "the holding is not

21 limited to refusals as evidenced by the Supreme Court's remark that a 'claim to a procedural due

22 process right in someone else's legal proceeding would have unsettling collateral consequences.'"

23 *Durham v. Blinken*, No. 24-cv-02868-PSG-MRW, 2024 WL 3811146, at *6 (C.D. Cal. Aug. 8,

24 2024) (quoting *Muñoz*, 602 U.S. at 916); *see also Alam*, 2024 WL 4804557, at *10 (finding the

25 plaintiff's due process claim premised on the defendants' delay in processing his spouse's visa

26 was foreclosed by *Muñoz*).  District courts have also found the reasoning in *Muñoz* extends

27 beyond spousal relationships to other immediate family relationships, comparable to the sibling

28 relationship involved here.  *See Sheikhalizadehjahed*, 2024 WL 4505648, at *1 (finding the

15

plaintiff's due process claim premised on the defendants' delay in reviewing her father's visa application was foreclosed by *Muñoz*). As such, plaintiff's due process claim premised on defendants' delay in processing his sister's visa application is foreclosed by the Supreme Court's decision in *Muñoz* and will be dismissed.

### C.     Leave to Amend

Leave to amend should be granted "freely" when justice so requires. Fed. R. Civ. P. 15(a). The Ninth Circuit maintains a policy of "extreme liberality generally in favoring amendments to pleadings." *Rosenberg Bros. & Co. v. Arnold*, 283 F.2d 406, 406 (9th Cir. 1960). Reasons "such as undue delay, bad faith or dilatory motive . . . repeated failure to cure deficiencies . . . undue prejudice to the opposing party . . . [or] futility" may support denial of leave to amend. *Foman v. Davis*, 371 U.S. 178, 182 (1962). A district court "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990).

Here, plaintiff has not requested leave to amend his complaint. (Doc. No. 9.) More importantly, the undersigned concludes that amendment would be futile because the deficiency the court identifies with respect to plaintiff's due process claim cannot be cured by the allegation of additional facts. *Cook*, 911 F.2d at 247; *Andalib v. United States*, No. 8:23-cv-01110-FWS-KES, 2024 WL 685945, at *8 (C.D. Cal. Feb. 9, 2024) ("The court **DENIES** leave to amend the Complaint's Fifth Amendment claim because amendment would be futile given this claim relies on an asserted due process interest foreclosed by binding precedent."). Accordingly, plaintiff will not be granted leave to amend.

### CONCLUSION

For the reasons explained above,

1. Defendants' motion to dismiss (Doc. No. 6) is GRANTED IN PART AND DENIED IN PART as follows:

    a.    Defendants' motion to dismiss plaintiff's APA claim is denied;

    b.    Defendants' motion to dismiss plaintiff's Mandamus Act claim is denied;

        c.      Defendants' motion to dismiss plaintiff's due process claim is granted without leave to amend;

2.    Defendants' motion for summary judgment in their favor (Doc. No. 6) is DENIED without prejudice to refiling and/or supplementation; and

3.    The court sets an Initial Scheduling Conference for July 14, 2025 at 1:30 PM before the undersigned. The parties shall file a joint scheduling report no later than fourteen (14) days before this date.

IT IS SO ORDERED.

Dated: **April 30, 2025**

*/s/ Dale A. Drozd*
DALE A. DROZD
UNITED STATES DISTRICT JUDGE

17